■ Louis Wilday, Respondent, v. Bernard J. King et al., Appellants.— Staley, Jr., J. Appeal from a judgment of the Supreme Court, entered November 14, 1968 in Schenectady County, upon a verdict rendered at a Trial Term in favor of plaintiff. This action was brought to recover for personal injuries sustained by plaintiff on the evening of February 3, 1966 when plaintiff was hit by an automobile driven by defendant Bernard J. King, and owned by defendant King Tractor Co., Inc. At about 7:00 P.M. on that evening plaintiff was walking in an easterly direction along the north shoulder of Van Buren Road in the Town of Glenville, County of Schenectady, when an eastbound automobile in the southerly lane of the road stopped opposite him, and its driver asked plaintiff for directions to Whitbeck Drive. According to plaintiff this car stopped a little off the pavement and, after looking to see if there were any cars coming and seeing none, he crossed the street beyond the white line to a point about two feet from the stopped car when he was hit by defendant's automobile. He further testified that he heard no horn and saw no flashing lights. According to defendant Bernard J. King as he approached the scene of the accident he saw an approaching car with high beam lights on; he flashed his lights; the lights of the approaching car were not dimmed; as he approached the car, a "phantom shadow type object" came from his right side; he immediately hit his brakes and struck the object with his right front fender. He further testified that he left a skid mark in the pavement 15 feet long and that plaintiff was trying to crawl upon the snowbank when he found him. An MV-104 report dated the day after the accident and filed by or on behalf of defendant with the Department of Motor Vehicles contained the following statement under the item calling for the description and apparent cause of the accident, to wit: "Unknown car was stopped heading east on Van Buren Road with high lights on. Pedestrian was standing beside unknown car in middle of road. Car one going in opposite direction came in contact with pedestrian." When confronted with this statement on cross-examination defendant testified that the statement was wrong; and that plaintiff was oppo-

site the car and not alongside of it. He further testified that he was blinded to a point and stopped looking at the car and looked to the edge of the road; and he could see ahead in his own lane and could see the approaching car, and beyond it he could also see a car. Defendant's wife testified that she was a passenger in his car; that a car was heading towards them with its high beams on and her husband proceeded to blink his lights; that, as they approached the car, it appeared to be stopped and suddenly from "the north side of the road, this image appeared and, I say image because at that time, because of the lights, I did not see a face. I saw something that resembled a dark blue jacket or a dark green jacket and dark trousers, and then suddenly this image which turned out to be a body turned and I saw the man's face, and as all of this was happening my husband was hitting the brakes, and we came to a screeching halt." She further testified that the front right side of the car hit this man on impact and he came just barely over the right hand fender and just slumped on the ground in front of the car. On cross-examination she testified that defendant's car had adequate headlights; that she could see the distance that the headlights were able to shine; that the last hundred feet before the accident her husband was in the center of the lane; that he pulled to the left to avoid plaintiff and that when stopped "I would say he was further to the left in the west lane" and that there was no damage to the car. Marguerite Helldorfer testified that she witnessed the accident; that she had been traveling east on Van Buren Road and as she rounded a bend, she found a car parked in her lane; that she pulled up behind it and stopped to find out why it was parked there and sat there about a half a minute when she noticed another coming in the opposite direction; that, when this other car got almost even with the car in front of her, she noticed a gentleman step out from the shoulder of the road; that "I didn't see him until the headlights of the oncoming car picked up this man that had stepped out in front of the car and he had been hit by the oncoming car"; that the man was struck by the front right headlight area of the car; that the car was in the middle of its lane, and that the man was not hit with any great force and just seemed to "crumple" down directly in front of the car. She further estimated defendant's speed at "15 miles an hour, in that area, because it was a slippery road." On cross-examination she stated that she had been stopped almost a minute and during that time did not notice any other car in sight coming in the opposite direction; that she did not see defendant blink his lights; that she did not know what kind of a car was in front of her because it was dark; that she did not know whether a male or female was driving the car and that she did not see plaintiff "until he was hit with the car". The medical evidence indicated that plaintiff's injuries consisted of fractures of the left knee and left shoulder and multiple bruises. The jury returned a verdict for plaintiff in the amount of $13,250. Defendants now contend that plaintiff did not make out a prima facie case; that plaintiff was contributorily negligent as a matter of law, and that the verdict was against the weight of the evidence. Plaintiff's testimony placed him in the eastbound lane beyond the middle of the road when he was struck. His version then raises the inference of negligence on the part of defendant in that defendant who was westbound failed to keep to the right and in his own lane and struck plaintiff who was lawfully in the eastbound lane. Plaintiff then met the burden of producing evidence of negligence on the part of defendant. (*Pfaffenbach* v. *White Plains Express Corp.*, 17 N Y 2d 132.) The questions of negligence and contributory negligence were questions of fact to be determined by the jury as well as the question of credibility of the witnesses since the weight attributed to their testimony

was also for the jury's determination. The evidence here was conflicting not only between the testimony of plaintiff and defendant, but also to a certain extent between that of defendant and the eyewitness. Defendant's own motor vehicle accident report filed the day after the accident was consistent with plaintiff's version that he was beside an unknown car and inconsistent with defendant's testimony that the plaintiff stepped out from the shoulder of .the road. This report would also be inconsistent with the claim that plaintiff was struck 'by the right front of defendant's car. Defendant's wife placed his car partly in the eastbound lane when it stopped, yet defendant and the eyewitness placed his car in the center of the westbound lane. The jury could properly sift through this evidence and resolve these discrepancies in the evidence in favor of plaintiff. In this regard the jury had the benefit of observing and hearing the witnesses. We see no basis for disturbing the determination of the jury. (*Wragge* v. *Lizza Asphalt Constr. Co.*, 17 N Y 2d 313; *Ingersoll* v. *Liberty Bank of Buffalo*, 278 N. Y. 1; *Czekala* v. *Meehan*, 27 A D 2d 565.) Judgment affirmed, with costs. Herlihy, P. J., Reynolds, Staley, Jr., Greenblott and Sweeney, JJ., concur in memorandum by Staley, Jr., J.